IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-01159-WYD-BNB

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

    Plaintiff,

v.

EARL STEVENS and TWILA STEVENS,

    Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Plaintiff American Express Travel Related Services Company, Inc.'s Motion to Dismiss the Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 17].  For the reasons stated below, the motion is DENIED.

**BACKGROUND**

On October 3, 2011, Defendant Earl Stevens informed a representative of American Express Travel Related Services Company, Inc. (AETRS) that AETRS had made erroneous deposits into Defendants' bank account at Wells Fargo Bank, N.A. (ECF No. 1, ¶ 8).  The next day, Mr. Stevens opened up a new account at Wells Fargo and transferred a portion of the funds from the old account into the new account, leaving what he believed to be AETRS's funds in the old account.  (ECF No. 1, ¶ 11).  Mr. Stevens and a Wells Fargo employee then requested that AETRS withdraw the erroneously deposited funds.  (ECF No. 1, ¶ 12).  AETRS provided an accounting of the

-1-

amount deposited and made a demand upon Earl and Twila Stevens for funds in the amount of $174,693.15.  (ECF No. 1, ¶¶ 17, 18).  The Stevens contend that this accounting is inaccurate and that AETRS's agent, Mr. James Gebeleil, had previously confirmed that the proper amount owed to Plaintiff was $171,707.06.  (ECF No. 14, ¶¶ 16, 21).  The Stevens have offered to return this amount.  (ECF No. 14, ¶ 20).

On May 2nd, 2013, AETRS filed a complaint [ECF No. 1] against the Stevens for conversion and unjust enrichment based on its allegation that the Stevens failed to return funds that AETRS erroneously deposited into their bank account.  (ECF No. 1, ¶ 22).  In their Answer, Counterclaim, and Jury Demand [ECF No. 14], the Stevens assert a counterclaim for negligence based on the hardship caused by AETRS's erroneous deposits.  The Stevens claim that the deposits created substantial accounting and legal difficulties and caused their accounts to be frozen, preventing them from receiving their Social Security checks.  (ECF No. 20 at 5).  On July 17, 2013, AETRS filed this Motion to Dismiss the Counterclaim [ECF No. 17] on the basis that AETRS, a bank, can never owe a duty of care to a non-customer and therefore cannot be held liable for negligence here.  (ECF No. 17, ¶¶ 13, 14).

## STANDARD OF REVIEW

A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).  When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and construe all reasonable allegations in the light most

favorable to the non-moving party. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996). Thus, dismissal under Rule 12(b)(6) is only appropriate when the non-moving party can allege no set of facts entitling it to relief. *Id.* Here, whether the Stevens' counterclaim warrants dismissal hinges upon whether AETRS owed the Stevens a duty of care under the facts alleged.

## ANALYSIS

Federal courts sitting in diversity must apply the substantive law of the state in which they sit. *Erie R.R. v. Thompkins,* 304 U.S. 64, 78 (1938). In Colorado, a negligence claim must fail unless a legal duty is owed. *Hesse v. McClintic*, 176 P.3d 759, 762 (Colo. 2008). The existence and scope of a legal duty is a question of law for the court to determine. *Id.*

Courts consider many factors when determining whether the law imposes a duty, including "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987) (citations omitted). "Other considerations may also be relevant, depending on the circumstances of each particular case." *Id.* "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Id.*

One Colorado court has held that, in some circumstances, a bank owes no duty to non-customers to protect them from the torts of the bank's customers ("no-duty rule").

*See Weil v. First Nat. Bank of Castle Rock*, 983 P.2d 812, 814 (Colo. Ct. App. 1999); *accord Sigler v. Doe*, No. 10-CV-01794-LTB-BNB, 2011 WL 4829659 (D. Colo. Sept. 22, 2011). In *Weil*, the plaintiff's office manager and assistant opened an account at the defendant bank in their own names d/b/a plaintiff's business. *Id.* at 813. The pair embezzled $150,000 from the plaintiff by depositing checks payable to plaintiff's business into their account at the defendant bank. *Id.* The *Weil* court looked to the *Taco Bell* factors, *supra*, and reasoned that the bank owed no duty to the plaintiff because "it would be unreasonable to require banks to make an independent investigation of their customers' authority to use any particular unregistered trade name." *Id.*

While not unanimous, other jurisdictions have mostly embraced this no-duty rule in some form. *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) ("Banks do not owe non-customers a duty to protect them from the intentional torts of their customers."); *In re Terrorist Attacks on Sept. 11, 2001,* 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005) (same); *Gil v. Bank of Am., Nat. Ass'n*, 138 Cal. App. 4th 1371, 1379, 42 Cal. Rptr. 3d 310, 315 (2006) ("[A] bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an accountholder."); *Volpe v. Fleet Nat. Bank*, 710 A.2d 661, 664 (R.I. 1998) ("[A]bsent extraordinary circumstances a bank is not liable in negligence to a noncustomer payee for having failed to ascertain whether a check paid by it bears the payee's genuine indorsement."); *McCallum v. Rizzo*, 942878, 1995 WL 1146812 (Mass. Super. Oct. 13, 1995) ("[A] bank's failure to investigate a customer's suspicious activity, or failure to disclose suspicious activity to a third party, does not give rise to liability to the third party who is injured by the customer's fraud.");

*City Check Cashing, Inc. v. Manufacturers Hanover Trust Co.*, 166 N.J. 49, 64, 764 A.2d 411, 419 (2001) (bank owed no duty to non-customer check cashing service to warn about fraudulent certified check).  Courts justify the no-duty rule with the concern that imposing a duty on banks to protect non-customers from the torts of others "would expose banks to unlimited liability for unforeseeable frauds*."  Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002).

AETRS relies on *Weil* to contend that a financial institution can never, under *any* circumstances, owe a duty to a non-customer.  However, this no-duty rule is rooted in the widely-acknowledged principle that "in actions based on *nonfeasance* . . . it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act."  *City Check Cashing*, 166 N.J. at 59 (quoting W. Page Keeton et. al., *Prosser & Keeton on Torts* § 56 at 374 (5th ed.1984)) (emphasis added).  *See also* 57A Am. Jur. 2d Negligence § 13 ("Liability for nonfeasance is largely limited to those circumstances in which some special relationship can be established.").  Nonfeasance describes a "fail[ure] to aid . . . through beneficial intervention."  *Id.*

Misfeasance, by contrast, "occurs when . . . affirmative actions create a risk of harm."  *Id.*  The nonfeasance rationale underpinning the no-duty rule does not apply to a bank's misfeasance.  Indeed, application of the no-duty rule to banks' misfeasance would lead to absurd results.  For example, a bank could negligently hit a non-customer with one of its armored cars and escape liability simply because the armored car belonged to a bank.  Accordingly, no courts have applied the no-duty rule so broadly as

to allow banks to negligently cause harm through their own affirmative acts to anyone who is not a customer.

The Colorado Supreme Court has embraced this nonfeasance/misfeasance distinction in the context of an analogous no-duty rule.  *See Greenberg v. Perkins*, 845 P.2d 530, 536-37 (Colo. 1993).  The *Greenberg* court addressed the scope of the rule that physicians performing independent medical examinations for insurance companies owe no duty to examinees because they lack a physician-patient relationship.  *Id.* at 533.  The court was faced with the issue of whether the no-duty rule also applied to the physician's affirmative conduct in imposing a harmful test upon the examinee.  *Id.*  The court reasoned that the no-duty rule applied only to a physician's nonfeasance and not any misfeasance, stating:

> In the absence of special circumstances, the law does not generally impose upon a person a duty to take action for the benefit of another, even if it is reasonably apparent that such action is necessary to protect the other person from injury.  However, we have recognized that people owe a duty to use reasonable care with regard to their *affirmative* conduct and that such a duty extends to all who may foreseeably be injured if that conduct is negligently carried out.

*Id.* at 537 (emphasis added).  Accordingly, the court held that in the absence of a physician-patient relationship a physician "will not be liable for a failure to detect conditions" but *will* owe a duty of care to the examinee with regard to the physician's affirmative conduct in imposing tests.  *Id.* at 538.  Thus, no-duty rules do not grant broad immunity to all negligence claims made by those with whom no relationship has been established; they merely preclude duties to aid them through beneficial intervention.  *See Id.*

Here, the Stevens have claimed injuries caused by AETRS's misfeasance rather than nonfeasance, and have therefore averred sufficient facts to state a plausible claim to relief. Accepting the Stevens' factual allegations as true, application of the *Taco Bell* factors to AETRS's erroneous deposits warrants the imposition of a duty on AETRS to act with reasonable care when exercising control over its property.

First, it is foreseeable that repeated erroneous deposits could cause hardship to the unwilling recipient. The commingling of the account holder's funds with those of the responsible depositor is likely to cause logistical and legal difficulties for the account holder, as demonstrated by the case at bar. Even if the parties had agreed upon the amount AETRS deposited, the Stevens would still have needed to freeze their account and open a new one, and thus would still have suffered aggravation and disruption of their Social Security payments.

Furthermore, neither the magnitude of the burden of guarding against erroneous deposits nor the consequences of placing this burden on banks is so considerable as to preclude imposition of a duty here. Even absent a duty in tort, banks have a compelling interest in preventing the processing of erroneous deposits due to the obvious risk of loss to themselves. Thus, the net cost to banks in imposing a responsibility upon them to not mistakenly force their money upon unwilling recipients must necessarily be low. "[W]here cost of precautions is relatively low, social utility of not taking precautions is usually outweighed by the risk involved." *Taco Bell,* 744 P.2d at 50 (citation omitted).

Finally, loss-allocation principles dictate that the party in the best position to prevent a particular injury should bear the burden of doing so. *See, e.g., Patrick v. Union State Bank*, 681 So. 2d 1364, 1369 (Ala. 1996) (holding bank liable for identity

theft that injured plaintiff because bank was in the best position to prevent the fraud). When innocent individuals are injured by erroneous deposits they can neither predict nor protect against, and financial institutions can, by taking reasonable measures, prevent the erroneous deposits, the financial institution is in a far better position to prevent a loss to both itself and the individual victim.

Thus, "[w]here a bank's burden in shouldering a duty is minimal to avoid reasonably foreseeable losses, such a duty is proper. This is especially true where the bank is the party best in position to avoid the loss." *In re McMullen Oil Co.*, 251 B.R. 558, 572 (Bankr. C.D. Cal. 2000). Under the facts alleged, it is fair to impose upon AETRS a duty to exercise reasonable care when depositing money. Accordingly, the motion to dismiss is denied.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiff's Motion to Dismiss the Counterclaim [ECF No. 17] is **DENIED.**

Dated:  December 18, 2013

                                              BY THE COURT:


                                              s/ Wiley Y. Daniel
                                              WILEY Y. DANIEL,
                                              SENIOR UNITED STATES DISTRICT JUDGE